# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| GENE E. VOSS, GARY W. VOSS, CATHERINE A. MOLENAUR, and CHRIS A. MOLENAUR, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 05 C 1510 |
| v. | ) ) ) | Judge George M. Marovich |
| WASTE MANAGEMENT OF ILLINOIS, INC., MORTON INTERNATIONAL, INC. HONEYWELL, INC., EXXON MOBIL CORPORATION, H.B. FULLER COMPANY, BFI WASTE SYSTEMS OF NORTH AMERICA, INC individually and d/b/a BROWNING FERRIS INDUSTRIES, MAIL-WELL ENVELOPE COMPANY, WEBER FOREIGN MANUFACTURING, INC. f/k/a INK SPECIALTIES COMPANY, INC., and WELLS MANUFACTURING COMPANY, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gene and Gary Voss (the "Vosses") and Catherine and Chris Molenaur (the "Molenaurs") filed a five-count complaint against defendants Waste Management of Illinois, Inc. ("Waste Management"), Morton International, Inc. ("Morton"), Honeywell, Inc. ("Honeywell"), Exxon Mobil Corporation ("Exxon"), H.B. Fuller Company ("H.B. Fuller"), BFI Waste Systems of North America (individually and doing business as Browning Ferris Industries), Mail-Well Envelope Company, Weber Foreign Manufacturing, Inc. (formerly known as Ink Specialties Company, Inc.) ("Weber") and Wells Manufacturing Company. In Count I, plaintiffs asserted a

claim under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). In Counts II through V, plaintiffs asserted state law claims, including claims for negligence, negligence *per se*, private nuisance and trespass. Defendants moved (in multiple motions, some of which were joined by multiple parties) to dismiss plaintiffs' complaint. After numerous briefs (including defendants' sur-replies and plaintiffs' subsequent brief), plaintiff filed and served an amended complaint. The amended complaint added a sixth count asserting a violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972. Defendants moved (in multiple motions) to dismiss Count VI. For the reasons described below, the Court dismisses plaintiffs' amended complaint.[1]

I.  **Background**

   A.  **The CERCLA and RCRA framework**

CERCLA (sometimes called the Superfund law) "requires that sites contaminated by toxic wastes be cleaned up by or at the expense of the persons responsible for the contamination." *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 660 (7th Cir. 1995). CERCLA "grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994)).

---

[1] Technically, the filing of the amended complaint mooted the motions to dismiss the original complaint. Given that (a) the first five claims of the amended complaint are identical to the original complaint, (b) it would be wasteful to have the parties file additional briefs with respect to those five counts, and (c) no party has objected, the Court will consider the motions to dismiss the original complaint as motions to dismiss the first five counts of the amended complaint.

Under CERCLA, the EPA has the authority to effectuate toxic waste cleanup in a couple of ways. First, it can take responsive action itself and then seek reimbursement from the potentially responsible party. 42 U.S.C. § 9607(a)(4)(A). Second, the EPA may require the responsible party to clean up the property. 42 U.S.C. § 9606(a). Specifically, the EPA can issue an administrative order setting out the required remedial action. The EPA can enforce its order by filing suit in federal district court, and in that suit, the EPA can also seek civil penalties and punitive damages against a party who failed to comply with the administrative order. 42 U.S.C. §§ 9606(b), 9607(c)(3).

For its part, the recipient of a CERCLA administrative order has at least two options upon receiving the order if it does not believe that it is responsible for the cleanup. First, it can decline to comply with the order and wait for the EPA to file an enforcement suit. Alternatively, the recipient can comply with the order and then petition the EPA for reimbursement of its costs plus interest. 42 U.S.C. § 9606(b)(2)(A). The purpose of this provision is to "encourage potentially responsible parties to conduct a cleanup expeditiously and postpone litigation about responsibility to a later time." *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1324 (7th Cir. 1990).

As for private citizens, CERCLA also encourages them to "assume the financial responsibility of cleanup by allowing them to seek recovery" from responsible parties. *T&B Limited, Inc. v. City of Chi.*, 369 F. Supp.2d 989, 994 (N.D. Ill. 2005) (citing *Young v. United States*, 394 F.3d 858, 862 (10th Cir. 2005)).

Unlike CERCLA, the RCRA "is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental

hazards." *Megrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996). Rather, the RCRA's primary purpose is to "reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated[.]" *Id*. Citizens are allowed to bring private suits under RCRA in certain circumstances, but the "[c]hief responsibility for the implementation and enforcement of RCRA rests with the Administrator of the Environmental Protection Agency." *Megrig*, 516 U.S. 483-484 (citing 42 U.S.C. § 6902(b)).

**B.** **Facts relevant to defendants' motions**

The Court takes as true the allegations in plaintiffs' amended complaint. For some period of time, defendants operated the Wauconda Sand & Gravel Pit (the "Landfill"), which is located in Wauconda, Illinois. Originally a sand and gravel pit, the landfill was later filled with industrial waste without a clay or other liner. The plaintiffs allege that vinyl chloride was dumped in the landfill and remains there, contaminating both the aquifers and the water table. According to the complaint, vinyl chloride is a human carcinogen.

Plaintiffs the Vosses and the Molenaurs reside in Wauconda, Illinois. They filed this lawsuit purportedly on behalf of a class of persons residing in seven subdivisions near the Landfill. Although the Court has not certified a class, many of the allegations in the amended complaint are about the class itself and not about the plaintiffs. Plaintiffs allege that "[p]roperties throughout the Class are contaminated with hazardous substances, including vinyl chloride, from the" Landfill. They also allege that vinyl chloride has been discovered in the groundwater aquifer "underneath the Class [and] that serves as the source of potable and other usable water for Class area families."

**The EPA's involvement at the site**

Plaintiffs allege that the United States Environmental Protection Agency (the "EPA") has identified defendants as "potentially responsible parties with respect to hazardous substances in the Landfill." Each of the defendants was a respondent to an administrative order issued by the EPA in September 2004. Although the plaintiffs did not attach the relevant EPA administrative order (the "AO") to their amended complaint, one of the defendants attached the AO to its response brief. The Court can consider the AO without converting this motion to a motion for summary judgment because the AO was referenced in the amended complaint, is relevant to plaintiffs' claims and does not require discovery to authenticate or disambiguate. *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002).[2] On September 27, 2004, the EPA issued the AO, which "requires the Respondents to conduct removal activities described herein to abate an imminent and substantial endangerment to the public health" and describes the history of activity at the site.

According to the AO, the Landfill was used as a landfill from 1950 to 1978. It has been subject to EPA involvement since about 1985. In December 1989, the EPA issued an administrative order for the site. That 1989 administrative order required certain monitoring of the ground water and provided for stepped-up monitoring if the level of vinyl chloride ever "exceeded one-half of a Primary Drinking Water Standard[,]" i.e., if it ever exceeded 1.0 parts per billion ("ppb"). The EPA prepared five-year review reports in 1997 and 2002, concluding:

---

[2]The Court will not, however, consider the letters and other items the parties have attached to their briefs. Those were not referenced in the amended complaint and would require discovery to authenticate.

> the remedy would be protective of human health and the environment upon
> attainment of groundwater cleanup goals which was expected to require 30 years
> to achieve. All known threats at the Site had been addressed through upgrading
> the landfill cap, the installation and operation of a leachate control system,
> operation of a gas management system, and fencing to prevent access to the site.

(AO at 4). Testing of 21 Wauconda wells in 2003 found detectable vinyl chloride levels in eight wells, of which three had levels "at or above the Maximum Contaminant Level ("MCL") of 2.0 parts per billion[.]" In January 2004, the Wauconda Task Group sampled 121 wells within Wauconda Township. Eighty-one of the wells had detectable levels of vinyl chloride. Of those 81, none exceeded the MCL for vinyl chloride and four were greater than 1.0 ppb but less than 2.0 ppb.

Based on this history, the EPA issued its September 2004 AO. The AO ordered the respondents, among other things, to perform removal actions, re-sample residential drinking water wells that had already been sampled and sample any wells that had not yet been sampled, conduct supplemental remedial investigations (to determine the magnitude and extent of groundwater contamination), and conduct a feasibility study to evaluate remedial action alternatives. Plaintiffs allege the defendants have "undertaken investigative and limited remedial activities at the Landfill and surrounding areas." Among other things, plaintiffs allege that defendants have investigated the nature and extent of the contamination, sampled residential and monitoring wells in the Class area, interpreted data generated by the sampling, reported to the EPA, studied the feasibility of providing a permanent alternative source of clean water to Class area families and paid for bottled water for residents in the Class area. Defendants have also formed a group called the Wauconda Task Group ("WTG") to report to the EPA and other entities about the status of the site.

Based on these and other allegations, plaintiffs assert six claims against defendants. In Count I, plaintiffs seek recovery of response costs under CERCLA. In Counts II through V, plaintiffs allege common law claims including negligence, negligence *per se*, private nuisance and trespass. In Count VI, plaintiffs assert a claim under the RCRA. Defendants move to dismiss plaintiffs' amended complaint.

**II.**     **Standard on a motion for judgment on the pleadings**

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). As the Seventh Circuit recently admonished:

> Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of. . . . Any district judge (for that matter, any defendant) tempted to write "this complaint is deficient because it does not contain . . ." should stop and think: What rule of law *requires* a complaint to contain that allegation.

*Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005).

In considering a motion to dismiss, a court may not consider matters outside the pleadings without converting the motion to a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). The pleadings include documents attached to the complaint. *See* Fed.R.Civ.P. 10(c).

## III. Discussion

### A. Plaintiffs' CERCLA claim

In Count I, plaintiffs seek to recover response costs under CERCLA § 107(a), 42 U.S.C. § 9607(a). That section makes liable certain parties for "necessary costs of response incurred by any other person consistent with the national contingency plan[.]" *See* 42 U.S.C. § 9607(a)(4)(B). In this way, private individuals are incentivized to incur response costs because they have a private right of action to recover those response costs against responsible parties. To state a claim for response costs under CERCLA, the party must allege that (1) the defendants are covered persons under 42 U.S.C. § 9607(a); (2) the release or threatened release of a hazardous substance from a "facility"; (3) the plaintiff has incurred response costs; and (4) the plaintiff did not pollute the site. *T&B Limited*, 369 F. Supp.2d at 994; *Pape v. Great Lakes Chemical Co.*, Case No. 93 C 1585, 1993 WL 424249 at *2 (N.D. Ill. Oct. 19, 1993).

Defendants argue that plaintiffs lack standing because they fail to allege that they were injured. Pursuant to Article III of the Constitution, the Court has jurisdiction only over cases or controversies and, thus, "parties seeking to invoke the jurisdiction of federal courts must show that they have standing to sue within the meaning of Article III." *Krislov v. Rednour*, 226 F.3d 851, 857 (7th Cir. 2000). The minimum standing requirements are: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As the Supreme Court explained in *Warth v. Seldin*:

> The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only

> when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . .'

*Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The "party invoking federal jurisdiction bears the burden of establishing" jurisdiction. *Lujan*, 504 U.S. at 561. On a motion to dismiss, the Court considers whether the plaintiff has adequately *alleged* facts supporting standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In this case, plaintiffs allege only that *class members* incurred response costs. Specifically, plaintiffs allege that "members of the Class have incurred and will continue to incur 'response costs' within the meaning of Section 101(23-25) of CERCLA, 42 U.S.C. §§ 9601 (23)-(25)." (Am. Complt. ¶ 38). So while the plaintiffs have adequately alleged that *others* have suffered injury, i.e., incurred response costs, they have not alleged that they *themselves* incurred any response costs. Because the plaintiffs have not adequately alleged that they were injured, they have failed to allege that they have standing to pursue their CERCLA claim.

For this reason, the Court dismisses Count I without prejudice. Plaintiffs' failure to plead their own injury may have been an oversight (i.e., they may be able, consistent with Rule 11, to allege that they incurred response costs). Accordingly, plaintiffs are granted leave to amend Count I.

    **B.**    **Plaintiffs' Resource Conservation and Recovery Act claim.**

In Count VI, plaintiffs assert a claim under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B). That section provides a private right of action "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present

an imminent and substantial endangerment to health or the environment." *See* 42 U.S.C. § 6972(a)(1)(B). The right to bring suit, however, is limited by, among other things, a notice requirement and a prohibition against private claims where the EPA has already taken certain actions with respect to the alleged violation. Defendants argue that plaintiffs' RCRA claim is barred by each of these limitations.

        **1.**        **The Notice Requirement**

Three defendants, Weber, H.B. Fuller and Exxon, move to dismiss Count VI on the grounds that plaintiffs failed to comply with the notice procedures outlined in the RCRA. Specifically, these defendants argue that the notice plaintiffs provided before adding an RCRA claim was insufficient.

    The statute provides:

    No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to–
    (i) the Administrator;
    (ii) the State in which the alleged endangerment may occur;
    (iii) any person alleged to have contributed to or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section, . . .

42 U.S.C. § 6972 (b)(2)(A). The notice and 90-day requirements are "mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion." *Hallstrom v. Tillamook Cty*, 493 U.S. 20, 31 (1989). Although the defendants describe the requirement as jurisdictional, the Supreme Court explicitly stopped short of calling the notice provision jurisdictional. *Hallstrom*, 493 U.S. at 31 ("In light of our literal interpretation of the statutory requirement, we need not determine whether

§ 6972(b) is jurisdictional in the strict sense of the term."). Still, if the "action is barred by the terms of a statute, it must be dismissed." *Id*.

Defendants do not dispute that they received a notice more than 90 days before plaintiffs amended their complaint to add a cause of action under the RCRA.[3] Rather, defendants argue that the notice is insufficient because it fails to comply with the terms of a federal regulation, which provides:

> Notice of intent to file suit under [42 U.S.C. § 6972(a)(1)] shall be served upon an alleged violator . . . in the following manner:
> (1) If the alleged violator is a private individual or corporation, service of notice shall be accomplished by registered mail, return receipt requested, addressed to, or by personal service upon, the owner or site manager of the building, plant, installation, or facility alleged to be in violation. . . . If the alleged violator is a corporation, a copy of the notice shall also be mailed to the registered agent, if any, of that corporation in the State in which such violation is alleged to have occurred.

40 C.F.R. § 254.2. The plaintiffs sent the required notice via registered mail not to the owner/site manager and registered agent but rather to the attorneys who had filed appearances on behalf of the various defendants. Three defendants cry foul.

These defendants have not convinced the Court that plaintiff's notice was improper. *Hallstrom* relied on the plain language of the statute in concluding that the 90-day notice requirement was a mandatory condition precedent. *Hallstrom*, 493 U.S. 20, 31. Nothing in

---

[3]Although the statute says "no action may be *commenced*" absent compliance with the notice requirement, the majority of district courts have concluded that a plaintiff may file a complaint without an RCRA claim before the 90 days have passed and then amend the complaint to add an RCRA claim after the 90 days have passed. *Clorox Co. v. Chromium Corp.*, 158 F.R.D. 120, 126 (N.D. Ill. 1994) ("Clorox 'commenced' the RCRA claim when it filed its amended complaint, well after Defendants received notice."); *College Park Holdings, LLC v Racetrac Petroleum, Inc.*, 239 F. Supp.2d 1322, (N.D. Ga. 2002) ("CPH 'commenced' the RCRA claim when it filed its amended complaint"). Because the parties have not raised the issue and because it is not jurisdictional, the Court need not decide the issue.

*Hallstrom*, however, said that compliance with the regulation was a mandatory condition precedent or that the notice must meet certain requirements. *See Atlantic States Legal Foundation v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997) ("*Hallstrom*, however, said nothing about the content of the notice."); *College Park*, 239 F. Supp.2d at 1332 ("*Hallstrom* did not hold that a RCRA plaintiff had to comply with the administrative regulations dealing with notice."). The majority of courts that have considered the issue have concluded that strict compliance with the regulation is not mandatory. *College Park*, 239 F. Supp. 2d at 1332 (noting that "[t]he court acknowledges that compliance with section 254.2(a) is preferable to noncompliance because it eliminates disputes over notice, but the court cannot agree that such regulatory compliance is a prerequisite to subject matter jurisdiction in federal court" and concluding that notice by certified mail to the party's in-house counsel sufficed); *Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp.2d 426, 432 (M.D. Pa. 2000); *but see Darbouze v. Chevron Corp.*, Case No. 97-2970, 1998 WL 42278 at *2-3 (E.D. Pa. 1998). The Court agrees with the majority. Furthermore, even if strict compliance with the regulation were mandatory, once litigation has commenced, it is generally considered sufficient to serve the attorney who filed an appearance on behalf of a party instead of serving that party's registered agent for service of process. As of the date (May 4, 2005) plaintiffs mailed their notice, attorneys had filed appearances in this case on behalf of Weber, Exxon and H.B. Fuller, among others.

The Court concludes that plaintiffs met the notice requirement of § 6972(b)(2)(B)(iv) when they sent notices by registered mail to the attorneys who had filed appearances on behalf of H.B. Fuller, Weber and Exxon. Their motions to dismiss Count VI on the basis of the notice requirement are denied.

## 2. The EPA administrative order bar

The notice requirement is not the only statutory provision that prevents the commencement of an RCRA claim. The statute also limits the private right of action by providing:

> *No action may be commenced under subsection (a)(1)(B) of this section if the Administrator*, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment–
>
> * * *
>
> (iv) *has* obtained a court order (including a consent decree) or *issued an administrative order under section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 or section 6973 of this title pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action*. In the case of an administrative order referred to in clause (iv), actions under subsection (a)(1)(B) of this section are prohibited only as to the scope and duration of the administrative order referred to in clause (iv).

42 U.S.C. § 6972(b)(2)(B)(iv) (emphasis added). Like the notice requirement, which also acts as a bar to certain citizen suits, this section reflects Congress's choice to make the EPA the primary enforcer. As the Seventh Circuit has explained about the citizen suit provision of the RCRA:

> Section 6972(b)(1)(B) belongs to a genre common to environmental laws under which citizen suits serve as goads to both the EPA and polluters without displacing the federal agency as the principal enforcer. When describing a similar provision in the Clean Water Act, the Supreme Court observed that citizen suits may supplement but not supplant public litigation.

*Supporters to Oppose Pollution, Inc. v. The Heritage Group*, 973 F.2d 1320, 1324 (7th Cir. 1992).

The allegations in the amended complaint make it clear that the EPA has issued an administrative order under section 106 of CERCLA. Plaintiffs, however, make two arguments in

-13-

an attempt to convince the Court that their RCRA claim is not barred by § 6972(b)(1)(B)(iv). First, plaintiffs argue that defendants are not acting diligently with respect to the AO. Second, plaintiffs argue that their claim is beyond the scope of the AO.

### a. Diligence

As the plaintiffs point out, the EPA's issuance of an AO bars a citizen suit only if "a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action." *See* 42 U.S.C. § 6972(b)(1)(B)(iv). The RCRA does not define diligently, and the parties have not pointed the Court to any cases interpreting the word. Nor has the Court found any. The plain meaning of diligently, however, is steadily applying oneself.

Although the plaintiffs may not be *satisfied* with the speed or manner with which the defendants are engaging in the removal action, remedial action or RIFS, plaintiffs have alleged diligent action. Specifically, plaintiffs allege the defendants have "undertaken investigative and limited remedial activities at the Landfill and surrounding areas." Among other things, plaintiffs allege that defendants have investigated the nature and extent of the contamination, sampled residential and monitoring wells in the Class area, interpreted data generated by the sampling, reported to the EPA, studied the feasibility of providing a permanent alternative source of clean water to Class area families and paid for bottled water for residents in the Class area. These are the "removal actions" outlined in the AO. Thus, plaintiffs' own allegations show that the EPA "issued an administrative order under section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 or section 6973 of this title pursuant to which

a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action."

      b.      **Scope of the AO**

Section 6972(b)(1)(B)(iv), of course, prevents citizen suits "only as to the scope and duration of the administrative order referred to in clause (iv)." *See* 42 U.S.C. § 6972(b)(1)(B)(iv). Thus, an RCRA claim to abate, say, a coal-burning factory's pollution of the air over a gas station is outside the scope of an administrative order addressing, say, soil pollution caused by leaking pumps at that gas station. Plaintiffs argue that their RCRA claim is outside the scope of the AO because "every remedy sought in the Count–clean water supply, groundwater treatment, vapor sampling and remedy–is outside the scope of the UAO." (Plaintiffs' Response Brief at 7).

The Court disagrees that plaintiffs' RCRA claim is beyond the scope of the AO. The AO seeks to address the problem of vinyl chloride contamination in groundwater and wells near the Landfill. *See* AO at 6 (AO seeks to address the threat of "[a]ctual or potential contamination of drinking supplies or sensitive ecosystems; that factor is present at the Site due to the existence of vinyl chloride in groundwater that is drawn into residential drinking water wells for household use."). Plaintiffs seek to paint their claim as outside the scope of the AO by focusing their brief on vinyl chloride *vapors*. The Court fails to see how the vapors are outside the scope of the AO. The potential vinyl chloride vapors plaintiffs fear are directly related to the presence of vinyl chloride in the groundwater (which the AO unmistakably covers). Plaintiffs allege that it is possible for the vinyl chloride in the water to vaporize and affect plaintiffs. If that is so, then the Court fails to see how abatement of the vinyl chloride vapor could be separated from abatement

of vinyl chloride in the groundwater. Abatement of the groundwater problem should, necessarily, also abate the vapor problem. It would make little sense for the parties to litigate abatement of the vapor in this Court while the EPA, separate and apart from this litigation, works to abate vinyl chloride in the groundwater. Plaintiffs' RCRA claim is within the scope of the AO.

For these reasons, the Court concludes that plaintiffs' RCRA cause of action is, as of this time, barred by 42 U.S.C. § 6972(b)(1)(B)(iv). Count VI is dismissed. *See Hallstrom*, 493 U.S. at 31 ("if an action is barred by the terms of a statute, it must be dismissed."). This dismissal is without prejudice to plaintiffs' right to file their RCRA claim in the future should the claim cease to be barred by the statute.

### C. Supplemental jurisdiction

A district court may "decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Seventh Circuit has explained, a district court's decision to relinquish supplemental jurisdiction is "the norm, not the exception." *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (quoting *Fisher v. Information Resources, Inc.*, 873 F.2d 136, 140 (7th Cir. 1989)). Counts II through V are dismissed without prejudice.

## IV. Conclusion

For the reasons set forth above, the Court denies defendants H.B. Fuller's (#92), Weber's (#100) and Exxon's (#105) motions to dismiss Count VI. The Court grants the remaining motions (## 40, 42, 43, 51, 95 and 103) to dismiss. The Court dismisses plaintiffs' amended

complaint. The Court grants plaintiffs leave to file an amended complaint consistent with this opinion within 21 days.

ENTER:

George M. Marovich
United States District Judge

DATED: 02/02/06